## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **MARIO RODOLFO,** | § | |
| *Plaintiff* | § | |
| | § | **Civil Action No.:** |
| **v.** | § | |
| | § | **CLASS ACTION** |
| | § | **Complaint for Accommodation** |
| **CROWLEY ROAD PLAZA, LLC** | § | **Discrimination Under the A.D.A.** |
| *Defendant* | § | |
| | § | **JURY TRIAL** |
| | § | |

### *ORIGINAL COMPLAINT, DEMAND FOR JURY TRIAL AND FOR CLASS ACTION*

1.       Plaintiff, Mario Rodolfo, brings this action pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,*  the Texas Architectural Barrier Act[1] (the "TABA")  and the TEX. HUM. RES. CODE § 121.001 *et seq.* (the "THRC").  This Complaint seeks redress for past and continuing discrimination against persons with disabilities and to bring the premises into compliance with the Texas and Federal law including the ADAAG[2].  This discrimination is occurring at public accommodations in a building located generally at 5721 CROWLEY RD, FORT WORTH, TEXAS. The Defendant, Crowley Road Plaza, LLC owns the real property where the public accommodations are located.  Plaintiff brings this civil rights claim against the Defendant because Plaintiff and the members of the PROPOSED CLASS by reason of their disability, are being excluded from participation in or being denied the benefits of the services, programs, or activities of and being subjected to discrimination by the Defendant.

---

[1] Texas Revised Civil Statutes, Article 9102 *et seq.,* (the "TABA"). The TABA is now codified in the Texas Government Code at chapter 469.

[2] Federal ADA Guidelines for Buildings and Facilities, 28 C.F.R. Part 36, Appendix A, (the "ADAAG").

2.      Plaintiff seeks to enjoin the Defendant from maintaining and to require that the Defendant remove the architectural barriers that interfere with Plaintiff's and the PROPOSED CLASS' right to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the Defendant at this Property.

3.      Plaintiff also seeks a permanent injunction to prevent the Defendant from engaging in these unlawful practices, as well as declaratory relief, and damages for the violation of Plaintiff's civil rights and the civil rights of each of the members of the PROPOSED CLASS under Texas State law, along with attorney's fees and costs of litigation.

## JURISDICTION

4.      This Court has jurisdiction over the federal claims brought in this action under 28 U.S.C. §1331 and 42 U.S.C. §12188 and supplemental jurisdiction over any state claims pertaining to this discrimination under 28 U.S.C. §1367.

## PARTIES

5.      Plaintiff Mario Rodolfo is an individual with a disability within the meaning of the ADA Sec. 3(2)(A), 42 U.S.C. 12102(2)(A), and a "Person with a disability" as defined by TEX. HUM. RES. CODE § 121.002(4).  He uses a wheelchair for mobility.

6.      Defendant Crowley Road Plaza, LLC (hereinafter the "Defendant") is a Texas limited liability corporation.  It owns the real property in this case and is doing business as a landlord. The Defendant can be served by serving its registered agent for service of process.  The Defendant's agent on file with the Texas Secretary of State is Zahra Makhani located at 3413 High Vista Drive, Carrolton, Texas 75007.

7.     The building/real property that is the subject of this suit is more particularly described in Tarrant County records as KLIMIST ADDITION Block: Lot: A. The real property is referred to as the "Property" and has a value of no less than one hundred sixty five thousand dollars ($165,000.00).

8.     The Property is a small strip center with its own parking and several public accommodations including a M&K Food Market (the "Business").

## BACKGROUND OF LEGAL CLAIMS

9.     More than 25 years ago Congress determined that disabled people, such as the Plaintiff and the PROPOSED CLASS, were suffering discrimination.  Specifically, Congress found *inter alia* the following:

> (a)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;
>
> (b)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;
>
> (c)     the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and
>
> (d)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United

States billions of dollars in unnecessary expenses resulting from dependency and non-productivity."[3]

10.     As a result of these findings the Congress passed the Americans with Disabilities Act (the "ADA"), 42 U.S.C. Sec. 12101 *et seq*.  That act forms the basis for this action.  The ADA was designed to do several things, specifically among other things:

   a.     to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

   b.     to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

   c.     to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

   d.     to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."[4]

11.     In an effort to prevent discrimination against persons with disabilities, Texas passed the Texas Architectural Barrier Act[5] (the "TABA").  The intent of the TABA was to make all buildings and facilities covered by that article accessible to and functional for, persons with disabilities to, through, and within their doors.  The TABA states, "The provisions of this article are to further the policy of the State of Texas to encourage and promote the rehabilitation of persons with disabilities and to eliminate, insofar as possible, unnecessary barriers encountered

---

[3] 42 U.S.C. 12101(a) Only portions are set out in full so lettering does not match statute.

[4] 42 U.S.C. 12101(b).

[5] Tex. Civ. Stat. Art. 9102 Sec. 3(b). The TABA was later incorporated into the Tex Gov Code chapter 469.

*PLAINTIFF'S ORIGINAL COMPLAINT FOR CLASS ACTION AND DEMAND FOR JURY TRIAL*
*Page 4 of 28*

by persons with disabilities, whose ability to engage in gainful occupations or to achieve maximum personal independence is needlessly restricted."[6]

12.     The Texas Accessibility Standards adopted as a result of the TABA apply to "a privately funded building or facility defined as a 'public accommodation' by Section 301(7) of the Americans with Disabilities Act of 1990, and its subsequent amendments, that is <u>constructed or renovated, modified, or altered on or after January 1, 1992.</u>"[7] (*emphasis added*)

13.     The Texas Human Resource Code prohibits discrimination against disabled individuals to wit, "Persons with disabilities have the same right as persons without disabilities to the full use and enjoyment of any public facility in the state." Tex Hum Res. Code 121.003 makes a failure to comply with Chapter 469 of the Government Code or to make reasonable accommodations in policies practices and procedures an act of discrimination.

14.     So both Federal and State laws impose obligations on commercial property owners regarding the disabled.

15.     As a result of Mr. Rodolfo's disability, using many public accommodations is already difficult even when architectural barriers have been removed.  The Defendant, by failing to comply with the law and by operating with a non-complying public accommodation continues the discriminatory effects that the laws sought to reform.

16.     Under the ADA, both the landlord who owns the building and the tenants who own or operate the places of public accommodation are liable for the violations of the ADA alleged

---

[6] Tex. Civ. Stat. Art. 9102 Sec. 1.

[7] Tex. Civ. Stat. Art. 9102 Sec. 2(a)(4).

herein.  As between those parties, allocation of responsibility for complying with the obligations of the ADA may be determined by lease or other contract.  36 C.F.R. 201 (b).

17.     Under Texas law the owner of the property is responsible for THRC damages that are conclusively presumed to have occurred when a violation of Chapter 469 has occurred or when an owner fails to make reasonable accommodations to its policies practices and procedures resulting in discrimination.

18.     Congress provided that the primary enforcement mechanism for the ADA would be private citizens.  The State of Texas provided that private citizens have the right to file suit in a court of competent jurisdiction to seek recovery for damages. Thus, private citizens have been given the right to file suit to enforce these civil rights laws to assure access to the public accommodations in Texas.

19.     The Property is completely under the control of the Defendant.  The Plaintiff and the members of the PROPOSED CLASS have no control of the Property or the fact that they are disabled.  The existence and requirements of 25 year old laws can come as no surprise to any entity operating a Business or owning commercial property.

<u>**Pre-Suit Notice Was Attempted**</u>

20.     Pre-suit notice is <u>**NOT**</u> <u>required under the statutes.</u>  However, counsel for the Plaintiff did provide such notice to the Defendant.  A letter was sent to the Defendant's registered agent at the address on file with the Texas Secretary of State along with a copy of the draft Complaint requesting the Defendant contact Plaintiff's counsel if it cared to try and resolve this matter without litigation. No response was received.

21.     Records indicate that the Defendant purchased the Property approximately 3 years ago. Some of the architectural barriers present at the Property are open and obvious and would have been so to anyone purchasing the Property.

22.     At any time prior to receiving the letter from the Plaintiff the Defendant could have modified the Property to come into compliance with the 25 year old laws and avoided this suit. But the Defendant did not. What the Defendant chose to do instead was to purchase a piece of commercial property that is not in compliance with the laws and then to own and operate the Property with open and obvious barriers that have been improperly modified in direct violation of Texas law.

23.     Defendant's conduct discriminates against the Plaintiff and the PROPOSED CLASS. Mr. Rodolfo and the PROPOSED CLASS, are now exercising their right granted by Congress and the State of Texas, to enforce the laws to stop the discrimination and to enforce the statutory penalties for the discrimination the Defendant has caused.

<u>**Need For Class Certification**</u>

24.     ADA Title III cases and cases brought under the THRC are civil rights cases.  The discrimination, in general, is the existence of architectural barriers at the properties. The ADA and Texas laws were designed to eliminate those discriminatory barriers <u>over time</u>.  The laws require that new locations be designed and constructed in full compliance, and they require that <u>all modifications</u> to existing locations that affect access, also be made in full compliance.[8]  The laws are structured so that over time, gradually, all properties will be or become compliant to the maximum extent feasible.

25.     It has now been 25 years since passage of those laws and compliance has simply not occurred as expected because both new construction and modifications are regularly not made in compliance.  And compliance will never be achieved so long as modifications and new construction continue to violate the standards.  When commercial property is purchased without regard to whether it is in compliance and whether non-compliant modifications are built into a property a significant purpose of the law is thwarted and this prevents gradual compliance.

26.     For more than 15 years now counsel for the Plaintiff and the PROPOSED CLASS, has represented disabled individuals on ADA Title III barrier cases. During that time it has become abundantly clear that individual ADA Title III cases are considered nothing but a nuisance by the vast majority of commercial property owners.  The money damages available under state law to an individual seeking enforcement are only $300.00 per violation.

27.     Thus the only real "damages" in an individual ADA case, above and beyond the costs to "fix", are the potential attorney's fees.  So property owners are not concerned about getting caught out of compliance because there is no real penalty.  Even in the rare occasion where an owner is caught and sued, the downside amounts to nothing more than doing what they should have already done and possibly paying a "nuisance" attorney fee in addition to resolve the case. [9]

28.     As a result of this situation, commercial property owners are simply not motivated to come into compliance, or to be sure whatever modifications they do make are made in

---

[8] The ADA also imposes an affirmative obligation to make readily achievable modifications to the property.
[9] Further, the court is well aware that ADA Title III cases are regularly referred to derogatorily as "drive by litigation" and the people bringing the cases along with their counsel are subtly smeared as somehow unscrupulous. This situation tends to further decrease compliance and to seriously dissuade members of the PROPOSED CLASS from even raising issues of discrimination. Bringing this suit as a class action makes it clear that this case is not "drive by litigation", it is serious, and the plaintiff and counsel stand ready to prove each and every allegation contained herein.

compliance, or to make sure that when they buy property that it is <u>in compliance</u>.  A quick drive around the Metroplex to view the general state of compliance in older properties, newer properties, and in the modifications that have been made to both types of properties is enough to show any objective person that the laws are almost universally ignored, misunderstood, or given nothing but lip service.[10]   The objective state of compliance that exists, now 25 years later, is strong evidence that the purpose of both the federal and State laws has been substantially thwarted.

29.     The Property involved in this case is a perfect example. It is an older property that has one openly non-compliant parking space and curb cut set at the far end of the Property.  The curb cut is clearly a modification made in an effort to come into compliance. But it was not done in a compliant fashion.[11]  When there is not even one accessible parking spot at a public accommodation, such as in this case, it is impossible to say that the owner engaged any type of reasonable due diligence prior to purchasing the Property, or while operating it for 3 years.

30.     Any basic due diligence regarding access compliance would have turned up this issue. So either the Defendant ignores the law, or the Defendant does not have any policies, procedures and practices to be sure it is in compliance with the law. It is exactly this type of situation that shows the need for class action litigation.  This Property has operated blatantly out of compliance discriminating against individuals for years. Yet nothing will be changed until suit is filed.  It cannot be any clearer, there is virtually no compliance.

---

[10] Attached to this Complaint are a few examples of conditions that exist within half a mile of the Property in this case.  As the court can see, the conditions are blatantly out of compliance.

[11] The last two pictures attached are of the parking spot and the front of the Property showing that there is no other accessible parking at the Property.

31.     Filing this ADA Title III case as a class action instead of as an individual claim will ultimately result in <u>less *overall* litigation in the courts and greater *overall* access for the PROPOSED CLASS in the future</u>.  Property owners will begin to see that a continued failure to comply can result in consequences beyond the "nuisance" cost of an individual suit if caught. Thus many property owners will come into compliance <u>before</u> being sued, be more careful when purchasing property to be sure it is in compliance, and owners will make sure that modifications that are or have been made, are or have been made in compliance, <u>just as the laws intended</u>.

32.     For the foregoing reasons the Plaintiff now seeks to exercise the full panoply of rights and protections that the law provides by not only seeking the injunctive relief that will benefit the PROPOSED CLASS, but by taking the additional and crucial step of aggregating the conclusively presumed $300.00 damages <u>that are owed to each member of the PROPOSED CLASS individually for each violation of their rights</u>, into a single class fund in this case that will send a clear message to this Defendant and other similarly situated potential defendants that discrimination against the disabled is a violation of the law.

## FACTS

33.     Mr. Rodolfo uses a wheelchair for mobility.  Mr. Rodolfo lives in Fort Worth near the Property. Mr. Rodolfo encountered the architectural barriers in the parking and the path of travel in from that parking, just as every other mobility impaired individual has.  Mr. Rodolfo has been discriminated against, just as countless other disabled individuals have been at that same Property over the years.

34.     Here is a partial list of the architectural barriers at the Property, the accessible parking provided is not accessible. The parking space is too sloped.[12] The access aisle is too sloped. The parking space is not a van accessible space. There is no signage for the space. The curb ramp in from the parking impedes into the access aisle. The curb cut is not compliant. The route in from that parking is not accessible.  There is no accessible route to the street or sidewalk.  It is clear from that short list that when there is not even an accessible parking spot, or a route in from that parking that the barriers are open and obvious.

35.     Because the Property does not provide proper parking or access in, the interiors have not been reviewed yet. However, after discovery when a full review has been conducted, a complete list of the barriers at the Property will be provided to the Defendant.   The listing in this Complaint is merely intended to provide the Defendant with information sufficient to conform to the notice pleading requirements and to show facts sufficient to prove liability.

36.     The types of architectural barriers that exist at the Property are precisely what the ADA and Texas laws were designed to eliminate.

37.     Mr. Rodolfo and members of the PROPOSED CLASS will encounter some of the above listed architectural barriers at the Property anytime he or they visit the Property.

38.     The barriers located at the Property discriminate against Plaintiff and the PROPOSED CLASS with regards to using the goods, services, facilities, privileges, advantages, and accommodations located at the Property as required by the law.

39.     As a result of the Defendant's conduct and in order to pursue this matter Plaintiff has retained counsel with more than 27 years of experience, including having been appointed class

---

[12] See photos attached of the Property and the parking.

counsel on several occasions to represent mobility impaired individuals of Texas.  The Plaintiff has agreed to pay his attorney a reasonable fee.  Pursuant to his statutory rights, Mr. Rodolfo will seek to recover his fees and any costs in this litigation from the Defendant if he is the prevailing party in this case and if the PROPOSED CLASS is certified counsel will seek fees for their representation as well.

## Specific Claims Supporting Class Certification

40.     Civil rights cases, such as the PROPOSED CLASS in this case, are "prototypical" class actions. The PROPOSED CLASS is an easily defined large group dispersed within the population at a known rate.[13] The PROPOSED CLASS seeks injunctive relief that is identical for each member.  And in this case, the damages sought are both identical and conclusively presumed to have occurred as to each member of the PROPOSED CLASS.  Thus, the prosecution of the liability issues in this case is virtually identical whether it is done as a class or as an individual claim. Once the violation is shown for any one claimant, such as the class representative, then there will be an identical violation for each claimant. As a result, there are no real "class complications" for trial and very limited issues for discovery as to class size.

### Requirements of Rule 23(A) Are Met

41.     Plaintiff seeks to maintain this action as a class action under Rule 23 (b)(3) and/or Rule 23 (b)(3) of the Federal Rules of Civil Procedure. The PROPOSED CLASS would consist of the following:

---

[13] The Texas Workforce Commission in a 2016 report puts the amount at approximately 5% of the population.

all persons who have a severe difficulty walking or climbing stairs, and/or who use wheelchairs, walkers, crutches a cane or scooters for mobility, who would therefore be considered, disabled under the ADA and persons with a disability under Texas law, who could bring a suit against the Defendant for accommodation discrimination at the Property under the ADA and/or under the THRC (hereinafter, the "PROPOSED CLASS").

42.     The PROPOSED CLASS contains more than 500 people and thus joinder of all members is impractical. The Texas Workforce Commission released a report in 2016 showing that there are approximately 90,000 mobility impaired individuals in Tarrant County who are considered disabled.  They represent approximately 5% of the population.  So even if 99% of the disabled individuals in Tarrant County are excluded from the PROPOSED CLASS, there are still more than sufficient members in the PROPOSED CLASS to show numerosity.

43.     Further, Tarrant County is approximately 900 square miles of territory. If the Property draws people from only 1.5 miles in each direction that still amounts to 9 square miles of territory, which is 1% of the 900 square miles. Once again the assumed amount is so small it cannot be legitimately disputed. The PROPOSED CLASS is, therefore, sufficiently numerous.

44.     The questions of law and fact in this case between members of the PROPOSED CLASS are not just similar, they are identical. The claims made in this case are identical regardless of which disabled claimant brings them. The law sets the requirements for what is compliance and what is an architectural barrier, regardless of the level of disability. As a practical matter there is, therefore, no difference at all between trying the liability issues in an individual ADA Title III case or one brought as a class.

45.     Specifically, here are just some of the questions of law and fact common to the PROPOSED CLASS:

*PLAINTIFF'S ORIGINAL COMPLAINT FOR CLASS ACTION AND DEMAND FOR JURY TRIAL*

a.  Whether Defendant is in violation of the THRC.
b.  Whether Defendant has violated Tex Gov Code Chapter 469.
c.  Whether Defendant is in violation of the ADA.
d.  What barriers are readily achievable to remove.
e.  What modifications have been made to the Property.
f.  What modifications have been made out of compliance.

46.     Plaintiff's claims are typical of the claims of the members of the PROPOSED CLASS. The Plaintiff, like other members of the PROPOSED CLASS, has a mobility impairment and uses a wheelchair.  Plaintiff's impairment is, for the most part, equal to or worse than the impairments of the unnamed members of the PROPOSED CLASS.  And once again, the right to relief under the claims is identical for any disabled person. No Plaintiff has nor could they ever have a right to relief any different than any other plaintiff or member of the PROPOSED CLASS regardless of the level of their disability. Therefore this case presents an ideal situation for a class.

47.     The named Plaintiff claims that the Defendant has violated named Plaintiff's civil rights by, among other things, owning or operating a public accommodation that has construction modifications that fail to comply with the ADAAG requirements, and/or by failing to have policies, practices, and procedures to prevent discrimination.  These failures are a violation of his civil rights and those of all members of the PROPOSED CLASS.

48.     Plaintiff will fairly and adequately protect the interests of the PROPOSED CLASS.  Once again, this is a civil rights case and the injunctive relief the Plaintiff is entitled to is identical to the relief that any other member of the PROPOSED CLASS would be entitled to obtain. Further the money damages sought for each member of the PROPOSED CLASS are identical and set by statute.  Plaintiff's interest is in getting compliance at the Property, assuring compliance in the

community at large, and in assuring that each member of the PROPOSED CLASS be allowed an opportunity to collect the damages they are owed, if a class is certified, and if they choose to do so.

49.     The Plaintiff has retained counsel with previous experience in class action litigation in precisely the same area within which this suit seeks recovery. Palmer Bailey is a lawyer with more than 27 years of litigation experience. He has represented numerous disabled individuals in individual lawsuits similar to this one for more than 15 years.  Further, Mr. Bailey has been approved in the Northern District as class counsel for disabled individuals on class action cases virtually identical to this one. Mr. Bailey is therefore particularly well suited to represent the PROPOSED CLASS.

**Class Is Proper Under Federal Rule Of Civil Procedure 23(b)(2)**

50.     This action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because the PROPOSED CLASS seeks injunctive relief that is identical for all members.   Defendant's violations of the ADA are applicable to all members of the PROPOSED CLASS equally regardless of the level of disability, or the type of barrier encountered. Therefore the injunctive relief sought in this case is identical as to each member of the PROPOSED CLASS.

51.     The obligation of the Defendant to each member of the PROPOSED CLASS is identical and is set by statute. Although damages are sought, the injunctive relief predominates.  Getting the Property fixed through injunction eliminates the very basis for discrimination in the future. Further, the damages that each member is entitled to receive are, once again, set by statute, and

are deemed to exist if discrimination is proved.  Once discrimination is proved as to one member, discrimination is proved equally as to all members. So clearly this class is appropriate.

### Class Is Proper Under Federal Rule Of Civil Procedure 23(b)(3)

52.     This action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is a superior method for the fair and efficient adjudication of the controversy.  The injunctive relief recoverable is identical for each member regardless of the level of their disability. Each person can not require any greater or lesser "compliance" than any other member. Differences between individual plaintiffs or claimants level of disability or experience at the Property does not change what the Defendant must do in order to comply.  Further, the action necessary to bring suit is identical for every PROPOSED CLASS member. The facts and the law do not just predominate between the PROPOSED CLASS members, the facts and law necessary to prosecute this case are identical between the PROPOSED CLASS members.

53.     There is no conflict between any class representative and any individual member of the PROPOSED CLASS.  To the extent that any individual sought to "control the class" there would still be no difference in how the case *even could be* conducted, because the individual cannot make the Defendant do or not do anything that any other claimant cannot.

54.     There is no other litigation pending against the Defendant on this issue and none is expected. And again, if there was any filed it would not be capable of obtaining any better or different relief than the present case and in all likelihood would be abated by the court pending the outcome of this matter.

55.     A class action is a superior method to resolve this claim. This class is needed in order to concentrate the state law damage claims to obtain relief for the PROPOSED CLASS that they otherwise would not be able to obtain.   Without a class the individual members of the PROPOSED CLASS have virtually no way to ever find out about the damages or to collect the damages they have incurred that are set by statute. The state law claims are only $300.00 per person for each violation. It is not economically feasible to bring hundreds of identical individual claims for $300 or $600 per claim. It would flood the court with identical claims and few lawyers would take such a case, it is simply too small to warrant proving up the liability.

56.     Further, the law of Barratry prevents counsel from informing other affected members of the disabled community about their rights to sue for their damages unless this notice is provided inside the class.  Thus the only practical way the members of the PROPOSED CLASS can even find out about their rights, let alone get an opportunity to collect their damages, is through a class action.  Without a class, the members of the PROPOSED CLASS will not have the opportunity to collect the damages they are owed, should they choose to do so.

57.     Further, it has become clear that even 25 years after this law was passed that it is not taken seriously for the reasons previously set out.  In this case, the Defendant owns and operates a piece of property with public accommodations on it that has open and obvious barriers, yet still it remains unfixed. A letter was sent pre-suit to provide the opportunity to avoid this action. No response was ever received from the Defendant. What more can even be done in such a case beyond bringing suit and seeking to apply the law? It cannot be clearer, the law was ignored. A class action will provide compensation for the class and send a clear message that the law is serious.

*PLAINTIFF'S ORIGINAL COMPLAINT FOR CLASS ACTION AND DEMAND FOR JURY TRIAL*

58.     There are few difficulties associated with operating this case as a class beyond identifying the class, filing the motion to certify it as such and then noticing the class for its opportunity to collect. The case will not involve discovery of class members. The injunctive relief will be identical. And quite frankly, the case will be conducted on the liability issues in an identical fashion to an individual Title III, THRC claim.    This case is therefore an ideal candidate for class certification.

**CAUSES OF ACTION**
**Count 1**
**ADA - Failure to Accommodate When Removal was Readily Achievable**

59.     The law states that "[n] o individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation *by any person who owns, leases (or leases to), or operates a place of public accommodation"*. 42 U.S.C. §12182(a) (italics added). The Property is a public accommodation.

60.     A facility means all *or any portion of buildings*, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located. 28 C.F.R. part 36.104 Definitions (italics added). The Property is a facility.

61.     The ADA places an ongoing obligation on all public accommodations to remove architectural barriers from existing facilities and public accommodations if that removal is readily achievable by defining discrimination in part as, a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities. 42 U.S.C. §12182(a)(iv).

62.     Readily achievable means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable factors to be considered include --

(1)     The nature and cost of the action needed under this part;

(2)     The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site; 28 C.F.R. part 36.104 Definitions

63.     The Justice Department has set out the priorities for barrier removal.  Specifically, the Justice Department has determined as follows:

(c) Priorities. A public accommodation is urged to take measures to comply with the barrier removal requirements of this section in accordance with the following order of priorities.

(1) First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces.  28 C.F.R. part 36.304(c) (emphasis added)

64.     The barriers that exist at the Property, some of which are set out in the facts section include, among other things, no accessible route from the street or sidewalk and no accessible parking or route in from that parking.  More than 25 years after this law went into effect this Property is operating with the exact same types of barriers that would have had existed before the law was passed and which the law was intended to remove.  The Defendant has failed to remove the barriers that are the most basic priority in order to provide access to the facility.

65.     The Defendant, like the owners or operators of all public accommodations, has known or should have known about the obligation to make alterations to provide access into the Property.

It has been readily achievable for the Defendant to have removed some, one, or more of the architectural barriers that exist at the Property.  The Defendant has failed to remove some, one, or more of the architectural barriers at the Property that were readily achievable to remove.

66.     The Defendant discriminates against Plaintiff and the PROPOSED CLASS on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at the Property in that the Defendant does not afford to Plaintiff or any member  of the PROPOSED CLASS the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available at the Property as required by law because the Defendant has failed to remove those barriers where the removal was readily achievable.

67.     As a direct and proximate result of the Defendant's failure to remove barriers when removal was readily achievable the Defendant has discriminated against the Plaintiff and the PROPOSED CLASS.

### Count 2
### ADA - Improper Alterations

The ADA in section 12183 defines a form of discrimination under section 12182 as:

(2) with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. Where the entity is undertaking an alteration that affects or could affect usability of or access to an area of the facility containing a primary function, the entity shall also make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking

fountains serving the altered area are not disproportionate to the overall alterations in terms of cost and scope (as determined under criteria established by the Attorney General).

68.     36 C.F.R. 406 provides that, "(a) New construction and alterations subject to this part shall comply with the standards for accessible design published as appendix A to this part (ADAAG)." (emphasis added) As such the law requires that alterations be built in compliance with the ADAAG new construction standards.

69.     Clearly parking and access through the front door "affects or could affect the usability of the building or facility or any part thereof."  Pictures attached to this Compliant clearly show a "curb ramp" running into the access aisle that is clearly a modification to the Property.  That ramp is also clearly not compliant and is the only route in from the parking space. The Property operates with open and obvious modifications that were not made in compliance.

70.     Without a formal inspection and discovery the Plaintiff cannot know exactly what additional modifications are not compliant and/or when they were made when the law is 25 years old. Many modifications may appear old but may in fact be technically new modifications. The pleading contained herein is made simply to put the Defendants on notice as required under the rules as to open and obvious modifications which do not comply and to plead sufficient information to show clear liability.

71.     When modifications affecting the usability of the Property are designed and constructed after the requirements of the ADA went into effect the modifications must comply with the ADAAG for new construction.

*PLAINTIFF'S ORIGINAL COMPLAINT FOR CLASS ACTION AND DEMAND FOR JURY TRIAL*

72.     The Defendant discriminates against Plaintiff and the PROPOSED CLASS on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at the Property in that, the Defendant does not afford to Plaintiff or any member of the PROPOSED CLASS the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available at the Property as required by law because it owns and operates a public accommodation where there are alterations or modifications made after January 26, 1992 that are not accessible to the maximum extent feasible.

73.     As a direct and proximate result of the Defendant's owning and or operating a public accommodation facility that has modifications that have not been made in compliance with the law the Defendant has discriminated against the Plaintiff and the PROPOSED CLASS.

### Count 3
### Failure to Implement Policies, Practices and Procedures to Prevent Discrimination under the ADA

74.     One form of discrimination is defined by the ADA in 42 U.S.C. §12182(a)(ii) as,

> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

75.     The Property has open and obvious architectural barriers including those listed in the facts section of this Complaint.  Even the most basic due diligence would have turned up the existence of these barriers for any owner operating the Property.  Further, the Property has only been owned for approximately 3 years, if the Defendant had conducted even the most basic due

diligence it would have discovered the existence of the barriers and made changes to those barriers. Buying and operating a Property without accessible parking for 3 years is clear evidence that there is no policy or procedure in place to try and prevent discrimination at the Property as required by law.

76.     The Defendant, either, bought and operates the Property with full knowledge that it is not in compliance, or it did not bother to take the most rudimentary steps to find out one way or the other. Either the Defendant has policies and procedures in place to be sure the Property Defendant buys, owns and operates is compliant or it does not.

77.     If the Defendant has policies, practices and procedures, then those policies discriminate against the disabled and the law requires they be modified. Alternatively, the Defendant has failed to put into place any policies, practices and procedures with regards to ADA compliance to assure even the most basic compliance with the law. Either way, the Defendant has discriminated against the Plaintiff and the PROPOSED CLASS.

78.     The Defendant discriminates against Plaintiff and the PROPOSED CLASS on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at the Property in that, the Defendant does not afford to Plaintiff or any member of the PROPOSED CLASS the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available at the Property as required by law because the Defendant has failed to make reasonable modifications to its policies, practices and procedures to afford such goods, services, facilities, privileges, advantages, or accommodations it offers to individuals with disabilities.

79.     As a direct and proximate result of the Defendant's failure to modify its policies practices and procedures the Defendant has discriminated against the Plaintiff and the PROPOSED CLASS.

**Count 4**
**Tex. Hum. Res. Code – Discrimination under 121.003 (d)(1) for**
**Violation of Texas Government Code Subchapters A and B.**

80.     Tex. Hum. Res. Code § 121.003(a) provides that persons who are physically disabled have the same right as the able-bodied to the full use and enjoyment of any public facility in the state.

81.     Tex. Govt. Code § 469.003 (Vernon 2003) defines one set of public facilities covered by the law, specifically, "a privately funded building or facility defined as a "public accommodation" by Section 301(7) of the Americans with Disabilities Act of 1990 (42 U.S.C. Section 12181), and its subsequent amendments, that is constructed or renovated, modified, or altered on or after January 1, 1992" (emphasis added). The Property was modified after 1993 and is therefore covered under Texas law.

82.     The State of Texas, Texas Accessibility Standards (the "TAS") of the Architectural Barriers Act, Article 9102, Texas Civil Statutes, are similar to and closely track the ADAAG. Article 9102 was simply codified into Chapter 469 of the Government Code in 2003.

83.     The TAS clearly sets out certain requirements for public accommodations such as the Property with regards to design requirements. The TAS are the state equivalent to the ADAAG.

84.     Tex. Hum. Res. Code § 121.003(d)(1) defines one form of discrimination as a failure to comply with Chapter 469 of the Government Code.  Owning covered property where modifications are made that fail to comply with TAS is a violation of Chapter 469 and therefore

a violation of 121.003. The parking curb ramp is a clear modification to the Property. The conditions set out in the facts portion of this complaint demonstrate violations of the TABA or Chapter 469 of the Government Code.  Under the law, the owner of the Property is responsible for those violations. The Property is covered.   Therefore a violation of 121.003(d)(1) has occurred.

85.     TEX. HUM. RES. CODE § 121.004(b) states that any violation of 121.003 is <u>deemed to have deprived</u> a person with a disability of his or her civil liberties. The person with a disability so deprived of his or her civil liberties is then given the right to maintain a cause of action for damages in any court of competent jurisdiction, and there is a <u>conclusive presumption of damages in the amount of no less than $300 deemed in favor of the plaintiff for that violation</u>.

86.     Thus the Defendant's failure to comply with Chapter 469 of the Gov Code by owning covered property where modifications have been made but were not made in compliance with the Texas Accessibility Standards when such compliance was required is deemed to be a violation of Texas law 121.003(d)(1) and Defendant is conclusively presumed to have damaged the Plaintiff and every member of the PROPOSED CLASS in the amount of no less than $300.00 for this violation.

### Count 5
### TEX. HUM. RES. CODE – Discrimination under 121.003 (d)(2)

87.     TEX. HUM. RES. CODE § 121.003(a) provides that persons who are physically disabled have the same right as the able-bodied to the full use and enjoyment of any public facility in the state.

88.     TEX. GOVT. CODE § 469.003 (Vernon 2003) defines one set of public facilities covered by the law, specifically, "a privately funded building or facility defined as a "public accommodation" by Section 301(7) of the Americans with Disabilities Act of 1990 (42 U.S.C. Section 12181), and its subsequent amendments, that is <u>constructed or renovated, modified, or altered on or after January 1, 1992</u>" (emphasis added). The Property was modified after 1993 and is therefore covered under Texas law.

89.     TEX. HUM. RES. CODE § 121.003(d)(2) defines one form of discrimination to be a failure to make reasonable modifications to policies, practices and procedures.  This provision basically tracts the violation set out in the previous section regarding the ADA failure to maintain policies practices and procedure. The pertinent portions of that pleading section are fully incorporated herein.

90.     The Defendant's conduct in buying and then owning and operating property for approximately 3 years which does not have any accessible parking, or an accessible route from the sidewalk through the front door of the Business and/or from any parking through the front door of the Business demonstrates a failure to make reasonable accommodation in its policies, practices and procedures to prevent discrimination and that failure is a violation of section 121.003(d)(2).

91.     The Defendant's failure make reasonable accommodations to its policies, practices and procedures that results in discrimination is a violation of 121.003(d)(2) against the Plaintiff and each member of the PROPOSED CLASS.

92.     TEX. HUM. RES. CODE § 121.004(b) states that any violation of 121.003 is deemed to have deprived a person with a disability of his or her civil liberties. The person with a disability so deprived of his or her civil liberties is then given the right to maintain a cause of action for damages in any court of competent jurisdiction, and there is a conclusive presumption of damages in the amount of no less than $300 deemed in favor of the plaintiff for that violation.

93.     Thus the Defendant's failure to make reasonable accommodation to its policies, practices and procedures is deemed to be a violation of Texas law 121.003(d)(2) and Defendant is conclusively presumed to have damaged the Plaintiff and every member of the PROPOSED CLASS in the amount of no less than $300.00 for this violation.

## *REQUEST FOR RELIEF*

*Wherefore* Plaintiff respectfully requests that the Court grant the following relief:

94.     An order directing Defendant to bring any modifications that are new construction at the Property into full compliance with both Federal and State law.

95.     An order to remove the architectural barriers that are readily achievable to remove.

96.     An entry of money judgment against the Defendant, awarding Plaintiff the statutory minimum damages of three hundred ($300) dollars for each violation of his civil rights and such further amount for his time and expense in the prosecution of this cause as a named plaintiff as shown by the evidence at trial.

97.     An award to each member of the PROPOSED CLASS for the statutory minimum damages provided for under the Tex. Hum. Res. Code § 121.004(b) of $300.00 for each violation of their civil rights by the Defendant.

98.     An award to Plaintiff and the PROPOSED CLASS for attorney's fees, including litigation expenses, and costs.

99.     An award to Plaintiff and to members of the PROPOSED CLASS for all other relief at law and in equity for which the Court deems appropriate.

Respectfully submitted  February 14,  2017 by,


*/s/Palmer D.Bailey*
Mr. Palmer D. Bailey
Bar Card No. 01533400
Law Office of Palmer Bailey
1400 Preston Road, Suite 400
Plano, TX 75093
Tel.  972.560.4095
Fax. 972.560.4096
pdbaileyesq@gmail.com
**Attorney for Plaintiff and the PROPOSED CLASS**


***Plaintiff and the PROPOSED CLASS demand a trial by jury.***







